IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HEATH RICHARD DOUGLAS,

                Petitioner,

v.

NANCY SUMMERS DOUGLAS,

                Respondent.

Case No.      1:20-cv-00423-PLM-RSK
Hon.          Paul L. Maloney

---

## VERIFIED PETITION FOR
## RETURN OF CHILD

    NOW COMES Petitioner, HEATH RICHARD DOUGLAS, by and through counsel, and by way of his *Verified Petition for Return of Child*, respectfully requests this honorable Court grant the relief requested herein and order the return of the parties' minor child to the Commonwealth of Australia. In support of his hereof, the Petitioner states as follows:

1. This action is brought by Mr. Heath Richard Douglas (the Petitioner), a citizen of Australia, to secure the return of his one-year old son, who was removed from Australia and <u>wrongfully retained</u> in the Western District of Michigan by the child's mother, Ms. Nancy Summers Douglas (Respondent).

2. The Respondent has wrongfully retained the minor child in the County of Ingham, State of Michigan since approximately October 3, 2019.

3. Accordingly, this petition is filed pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (the Convention)[1] and the International Child Abduction Remedies Act (ICARA).[2] A copy of the Convention is attached as ***Exhibit A***.

4. The Convention came into effect in the United States of America on July 1, 1988, and has been ratified by, among other Contracting States, the United States and Australia.

5. The objects of the Convention are:

> **Article 1(a)**: To secure the prompt return of children wrongfully removed or retained in any Contracting State; and

> **Article 1(b)**: To ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States.

6. The Convention authorizes a federal district court to determine the merits of a claim for the wrongful removal or retention of a child; it does not, however, permit the district court to consider the merits of any underlying custody dispute. Specifically, this means the district court is <u>not</u> to engage in a best interest of the child analysis.

7. The Petitioner files this petition seeking the prompt and safe the return of the minor child to Australia in accord with the law and spirit of both the Convention and ICARA.

<u>**JURISDICTION AND VENUE**</u>

8. This Court has jurisdiction pursuant to 22 U.S.C. §§ 9003(a) (jurisdiction under the convention) and 28 U.S.C. §§ 1331 (federal question jurisdiction).

9. Venue is proper pursuant to 22 U.S.C. §§ 9003(b) and 28 U.S.C. §§ 1391(b) as the child and Respondent are residing in the County of Ingham, State of Michigan.

---

[1] *See* 51 FR 10494-1 (1986).

[2] *See* 22 U.S.C. §§ 9001-9011 (2014).

## THE PARTIES

10. Petitioner is an individual, citizen, and resident of Australia, residing at 3 Henry Street, Curlewis, New South Wales, 2381, Australia. A copy of Petitioner's passport is attached as ***Exhibit B***.

11. The Respondent is an individual and citizen of the United States, upon information and belief residing at 2505 Showtime Drive, Apt. 421, Lansing, Michigan 48912. A photograph of the Respondent is attached as ***Exhibit C***.

## STATEMENT OF FACTS

12. The Petitioner and Respondent are the parents of the minor child at issue in this case.

13. The parties commenced their relationship in October of 2017. In December of 2017, the Respondent permanently relocated from the United States to New South Wales, Australia to further the relationship.

14. After the Respondent relocated to Australia, the parties intended to remain there for the foreseeable future (at minimum for the next decade).

15. The parties cohabitated and were married on February 10, 2018. A copy of the parties' Australian Certificate of Marriage is attached as ***Exhibit D***.

16. After the marriage, the Responded obtained an Australian Temporary Partner visa. The Respondent exercised this visa while her Permanent Partner visa was being processed. A copy of the visa application payment is attached as ***Exhibit E***.

17. The Temporary Partner visa permitted the Respondent to live, work and/or study in Australia while her Permanent Partner visa was being processed. It also permitted unrestricted travel to and from Australia.

18. Upon information and belief, the Respondent would have been issued a Permanent Partner visa by now.

19. The Respondent also has a New South Wales driver license and bank account with National Australia Bank.

20. The Respondent was employed and able to work remotely from the parties' residence in Australia.

21. On ▇▇▇▇▇▇ 2018, the Respondent gave birth to ▇▇▇▇▇▇ Douglas (▇▇▇▇ or the minor child). A copy of ▇▇▇▇'s birth certificate, photograph, and Australian Medicare card is attached hereto as ***Exhibit F***.

22. After ▇▇▇▇'s birth, the Respondent elected to become a full time stay at home mother, developing additional friends and relationships throughout the local community in the process.

23. Indeed, the parties agreed that they would raise ▇▇▇▇ in Australia – specifically that they would reside for at least ten years in Australia before even considering relocating the family to the United States.

24. Accordingly, prior to ▇▇▇▇'s removal and wrongful retention, the parties and minor child were habitual residents of Australia.

25. Under Australian law, the parties share custody rights with respect to ▇▇▇▇ by virtue of the *Family Law Act 1975*, sections 111B(4)(a) and 61C.

26. These rights include rights relating to ▇▇▇▇'s care, in particular the right to determine his place of residency. *Family Law (Child Abduction Convention) Regulations 1986*, regulation 4.

27. Up and until ████'s removal and wrongful retention, Petitioner was fully exercising his rights in Australia.

*Circumstances Leading Up to the Removal and Wrongful Retention*

28. After ████'s birth, the parties struggled as new parents.

29. In November 2018, the parties had an argument and the Respondent left the marital home with the maternal grandmother taking the keys to their home and promising their return. Despite statements from the maternal grandmother that she Respondent would return, neither did so; to the contrary the Petitioner was forced to endure several days of no communication or information with or about his son.

30. As the Petitioner was fearful the Respondent would leave with ████ out of the country without permission, on December 13, 2018 the Respondent applied for parenting time and temporary orders preventing ████'s removal from Australia. ***See Exhibit G***.

31. The Petitioner's application was scheduled to be heard on February 11, 2019.

32. After his domestic applications were filed, on December 15, 2018 the Respondent left a letter in the Petitioner's mailbox stating that she wanted to travel with ████ to the United States for support from friends and family. The Petitioner believed this note was left in an effort to resolve matters without further Court involvement.

33. In her letter, the Respondent spoke of the importance of spending time in the United States. However, she clearly indicated an intent to return to Australia, stating:

> If you want, I can show you my return ticket. If you really love me, you'll let me go.

A copy of the Respondent's letter is attached as ***Exhibit H***.

34. On December 17, 2018, the Petitioner attempted to exercise some parenting time (attended by the maternal grandmother). Again, the Petitioner believed this to be an overture of acting in good faith towards repairing the marriage.

35. When the maternal grandmother arrived, the Petitioner was able to spend approximately a half hour with his son. Thereafter, the maternal grandmother requested the Petitioner to sign███████ U.S. passport application.

36. When the Petitioner declined to sign the application, the maternal grandmother left with ████.

37. Despite the Petitioner's hope and intent to work on the marriage short of additional court proceedings, the maternal grandmother's behavior was worrisome. Accordingly, after this meeting, the Petitioner submitted a Child Alert Request to receive notification form the Australia Department of Foreign Affairs and Trade if the Respondent attempted to obtain an Australian passport for ████.

38. On or about December 21, 2018, the Respondent applied for and obtained an order restricting the Petitioner from contacting her. In her application, the Respondent alleged the Petitioner was harassing her through text messages.

39. The Petitioner disputes that the texts were intended to harass the Respondent. Rather, the Petitioner was trying to convey the importance of continuing the marriage and learn about ████'s well-being.

40. In hindsight, the Petitioner believes the Respondent's application for a restraining order was in retaliation for his refusal to sign the U.S. passport application form. Moreover, the Petitioner believes the restraining order was strategically requested for an advantage in anticipated domestic court proceedings.

41. Over the next several days, the Petitioner carefully considered the Respondent's request for a trip to the United States with ███. Amongst other things, the Petitioner weighed heavily the fact that he wanted this marriage to work and believed the issues were due, in large part, to the stress of being new parents. Indeed, the Petitioner's faith as a devout Christian rendered divorce abhorrent and compelled him to do anything and everything to preserve the marriage.

42. Accordingly, in an effort to support the Respondent and her needs, on December 24, 2018, the Petitioner signed ███'s Australian passport application. In so doing, the Petitioner substantially and materially relied on the Respondent's letter wherein she clearly indicated she and ███ would return to Australia.

43. Due to the restraining order, the Petitioner was unable to contact the Respondent directly. Accordingly, on February 11, 2019, the Petitioner emailed the Respondent's then-attorney, Ms. Monique Adams-Nash, to inform her that the passport application was signed and the Respondent could travel to the United States with ███ for a "short while." ***See Exhibit J***.

44. In good faith, the Petitioner dismissed his pending application with the Australian court for parenting time and a travel restraint.

45. On February 17, 2019, the Petitioner learned that the Respondent's car was abandoned at a carpark near a train station. The Petitioner believed this to be the approximate date the Respondent left Australia.

46. While the discovery of the car was concerning, when considering his emails to Ms. Adams-Nash and the Respondent's letter from December 15, 2018, the Petitioner strongly believed

the Respondent had left to the United States and would be returning once she had worked through any issues and concerns about the marriage and being new parents.

47. Indeed, the Petitioner's hopes for rekindling the marriage were bolstered when he learned on or around May 3, 2019 that the Respondent had withdrawn her application for her protective order. *See Exhibit K*.

48. Unfortunately, the Respondent did not timely return as the Petitioner had hoped.

49. After withdrawal of the application for the protective Order, the Petitioner attempted to email and call without success. The Petitioner did not push the matter as he was concerned repeated communication could appear "harassing." Moreover, the Petitioner continued to hope that by giving her the space she needed, the Petitioner would choose to return to Australia.

50. The Petitioner believed that the Respondent and ███ were staying in Ingham County, Michigan and reached out to the maternal grandparents. When they would not provide information, the Petitioner sought the aid of local law enforcement (who confirmed ███ was okay).

51. In August of 2019, the Petitioner traveled to the United States and visited the maternal grandparents. He was unable to contact them at their residence. The Petitioner successfully contacted the maternal grandfather at his place of employment, but was not able to get any information about the Respondent or ███. Again, choosing to cooperate and avoid further discord between himself and the Respondent, the Petitioner chose to leave and continue to give the Respondent the space she requested.

52. Throughout this time, perhaps naively, the Petitioner truly believed the Respondent would see the importance of their marriage and raising ███ together, and return to Australia.

53. The Petitioner's hope and belief came to an end in early October of 2019. On October 3, 2019, the Petitioner was served a complaint for divorce filed in the Ingham County Circuit Court, Case No. 19-002846-DM.

54. It was at this point that Petitioner finally and truly realized the Respondent did not intend to return to Australia with ████ and would wrongfully retain him in the United States (likely in order to secure favorable custody and parenting time orders).

55. Over the next month the Petitioner investigated and weighed his options. After due consideration, on October 31, 2019 the Petitioner submitted a request to Australian Central Authority to assist him in filing an application pursuant to the Convention for the return of ████ to Australia.

56. The Australian Central Authority approved the request and on or about November 15, 2019 submitted an application for ████'s return to the United States Central Authority.

57. Upon information and belief, United States Central Authority received the Petitioner's application and requested that the Respondent return ████ to Australia.

58. On December 27, 2019, through counsel, the Respondent refused to return ████ to Australia.

59. Accordingly, the Petitioner files the instant petition to secure ████'s return.

**Count I – Wrongful Removal and Retention of ████ by the Respondent: Claim for Relief under the Convention**

60. The Petitioner restates and incorporates by reference Paragraphs 1 through 59 as if fully set forth herein.

61. As set forth above, on or about October 3, 2019, after ████s removal from Australia, the Respondent wrongfully retained Joshua in Ingham County, State of Michigan, in violation

of Article 3 of the Convention and despite the Petitioner's efforts to have ███ returned to Australia.

62. The Petitioner has never consented to the continued and wrongful retention of ███ in the United States or to his continued living outside of Australia.

63. The Respondent's removal and retention of ███ is wrongful within the meaning of Article 3 of the Convention because:

    a. It is in violation of the Petitioner's rights of custody as established by Australian law. Specifically, the Respondent's retention is in violation of the Petitioner's parental and custody rights, including but not limited to the Petitioner's right to determine ███'s place of residency. *Convention*, Art. 5(a); *Family Law (Child Abduction Convention) Regulations 1986*, regulation 4.

    b. Prior to ███s removal and wrongful retention from Australia, the Petitioner was actually exercising his custody rights within the meaning of Articles 3 and 5 of the Convention and, but for the Respondent's removal and wrongful retention, Petitioner would have continued to exercise those rights.

    c. ███ was habitually resident with the Petitioner in Australia within the meaning of Article 3 of the Convention immediately before his removal and wrongful retention by the Respondent.

64. The Respondent is currently wrongfully retaining ███ in the County of Ingham, State of Michigan.

65. ███ is presently under sixteen (16) years of age.

66. The Petitioner has filed this petition less than one year from the Respondent's wrongful retention of ███. The Petitioner has never consented or acquiesced to ███'s wrongful retention.

### Count II – Provisional Remedies
### (22 U.S.C. §§ 9004(a) and Convention Art. 16)

67. The Petitioner restates and incorporates by reference Paragraphs 1 through 66 as if fully set forth herein.

68. The Petitioner requests that this Court issue an immediate order restraining the Respondent from removing ███ from the jurisdiction of this Court. The Petitioner also asks that this Court schedule an expedited hearing on the merits of this petition.

### Count III- Notice of Hearing
### (22 U.S.C. §§ 9003(c))

69. The Petitioner restates and incorporates by reference Paragraphs 1 through 68 as if fully set forth herein.

70. Pursuant to 22 U.S.C. §§ 9003(c), the Respondent shall be given notice of these proceedings in accordance with the laws governing notice of interstate child custody proceedings.

### RELIEF REQUESTED

Wherefore, the Petitioner Heath Richard Douglas respectfully requests this honorable Court grant the following relief:

1. An immediate temporary restraining order prohibiting the removal of ███ from the jurisdiction of this Court pending a hearing on the merits of this Verified Petition, and an order further providing that no person acting in concert or participating with the

Respondent shall take any action to remove ▇▇▇ from the jurisdiction of this Court pending a determination on the merits of the Verified Petition.

2. The scheduling of an expedited preliminary injunction hearing (via teleconference if necessary) on the merits of the Verified Petition and an order that the Respondent show cause at this hearing as to why ▇▇▇ should not be returned to Australia, and why such other relief as requested in the Verified Petition should not be granted.

3. A final judgment in the Petitioner's favor establishing that ▇▇▇ shall be returned to Australia where an appropriate custody determination can be made by an Australian court under Australian law.

4. For any such further relief as may be just and appropriate under the circumstances of this case.

Dated: May 14, 2020

Respectfully submitted,

_____/s/ Andrew M. Bossory_____
Andrew M. Bossory (P74364)
Attorney for Petitioner
Joshi | Attorneys + Counselors
2433 Oak Valley Drive, Ste. 500
Ann Arbor, Michigan 48103
(734) 545-3744 (Cell)
a.bossory@joshiattorneys.com

**VERIFICATION**

I am the Petitioner in this matter. I hereby verify that the statements made in this *Verified Petition for Return of Child* are true and correct to the best of my knowledge, information, and belief.

Dated:

_____
Heath Richard Douglas

Respondent shall take any action to remove ▮ from the jurisdiction of this Court pending a determination on the merits of the Verified Petition.

2. The scheduling of an expedited preliminary injunction hearing (via teleconference if necessary) on the merits of the Verified Petition and an order that the Respondent show cause at this hearing as to why ▮ should not be returned to Australia, and why such other relief as requested in the Verified Petition should not be granted.

3. A final judgment in the Petitioner's favor establishing that ▮ shall be returned to Australia where an appropriate custody determination can be made by an Australian court under Australian law.

4. For any such further relief as may be just and appropriate under the circumstances of this case.

Dated: May 14, 2020

Respectfully submitted,

_/s/ Andrew M. Bossory_
Andrew M. Bossory (P74364)
Attorney for Petitioner
Joshi | Attorneys + Counselors
2433 Oak Valley Drive, Ste. 500
Ann Arbor, Michigan 48103
(734) 545-3744 (Cell)
a.bossory@joshiattorneys.com

## VERIFICATION

I am the Petitioner in this matter. I hereby verify that the statements made in this *Verified Petition for Return of Child* are true and correct to the best of my knowledge, information, and belief.

Dated: 14th May 2020

_Heath Richard Douglas_
Heath Richard Douglas

-12-